## In re WEYANDT.
### Patent Appeal No. 4219.

Court of Customs and Patent Appeals.
Dec. 26, 1939.

Horace B. Fay, of Cleveland, Ohio (Spencer B. Michael, of Washington, D.C., of counsel), for appellant.

Howard S. Miller, of Washington, D.C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting, as unpatentable over prior art cited, two claims, numbered respectively 3 and 11, in an application for patent entitled, "Electro-Magnetic Vibrating Systems." No claims were allowed. The appealed claims read:

"3. In apparatus of the character described, the combination of a vibratory screen, an electromagnet for vibrating said screen, a thermionic valve including a filament and plate, through which the circuit from a suitable source of supply to said electromagnet is completed, a main switch and means mechanically connected to said main switch for energizing said filament for a predetermined time interval before the circuit through said valve to said electromagnet is closed."

"11. In apparatus of the character described, the combination of a vibratory screen, a vibratory feeder for said screen, a plurality of electromagnets respectively adapted to actuate said screen and feeder, a single source of alternating current supply, means including a plurality of thermionic valves each provided with filament and plate units through which pulsating current is supplied respectively to said electromagnets, a main switch, and means mechanically connected to said switch for energizing said filaments for a predetermined time interval before the circuit through said valves to said electromagnets is closed."

The references cited are: Woodruff, 562,750, Jun. 23, 1896; Dawson, 1,928,812, Oct. 3, 1933.

The board states: "The claims on appeal relate to a system comprising a screen for screening granular material. The screen is of the vibrating type. A hopper is provided for the screen. Separate electromagnetic means are provided on the screen and hopper, respectively, for independently vibrating the same. Both of the electromagnetic vibrators are supplied by pulsating current derived from a thermionic electric valve."

The subject matter involved is, in some of its phases, quite technical in character as is the reference patent to Dawson, entitled. "Control Apparatus."

The patent to Woodruff is for a grain separator. It does not embrace any electrical operating features—at least none are mentioned therein. Broadly, it discloses the combination of a hopper, into which uncleaned grain may be fed, with a screen for grading the grain, and teaches that hopper and screen may be separately vibrated by mechanical means described.

The examiner rejected both claims on prior art. Claim 3 was rejected on Dawson alone and claim 11 on Dawson in view of Woodruff. Claim 3 was also rejected "on the ground that it defines an exhausted combination and that the invention if any, resides in the electric control circuit or the time delay relay per se, rather than in the combination of a vibrating screen with the specific circuit."

. The board specifically approved all grounds of rejection set forth by the examiner.

■ Appellant emphasizes two features of his combination which, it is claimed, are not taught or disclosed by the prior art. These are present in both claims and are identified as "a main switch" and "means mechanically connected to said main switch" for performing the function of energizing certain filaments for a predetermined time interval before the circuit through the thermionic valve, or valves, to the electromagnet, or electromagnets, is closed. It will be noted that claim 11 defines a plurality of electromagnets and a plurality of thermionic valves while claim 3 requires only one of each.

Under the heading "The Nature of Appellant's Problem," the brief on his behalf states:

"For many years sorting and grading apparatus for bulk materials has been equipped with vibrators, and such vibrators have required special equipment to produce current of the desired wave form.

"In order to avoid the use of expensive motor generator sets and auxiliary equipment for producing current of the desired wave form for this purpose, appellant conceived the idea of using a thermionic tube for producing the desired wave form, such a tube being relatively inexpensive, readily replaceable and well adapted for the purpose in hand.

"The primary drawback to the use of such tube, as appellant discovered, was the fact that the filament of the tube was not permitted to become heated up before the load was thrown in, and this resulted in injury to the tube or the complete destruction of the tube by burning. Appellant further found that in order to avoid such injury or burning of the tubes, the filament of the tube should be heated for from eight to ten seconds before throwing in the vibrator load."

Under the heading "Appellant's Solution and Invention," the brief continues: "In order to thus preheat the filament for a predetermined time interval, appellant conceived the idea of using a time delay mechanism which, when the main line switch is manually closed, functions to permit the main line to heat the filament for such interval, and to then automatically throw on the load to the vibrator."

A description of appellant's system and its operation is given in his brief, references being made by numerals to the various features involved in the combination as shown in the drawings.

This description need not be repeated here in detail.

It is sufficient to state that appellant discloses a system, or device, by means of which granular materials such as sand, gravel, and the like may be graded, or separated as to sizes, by passing the materials through a screen after (when desired) such materials are fed to the screen from a hopper, such grading or separation being accomplished by vibrating the hopper and screen separately, the motive force of the vibrations being electrical energy. In other words, appellant utilizes electricity for "shaking" the screen and the feed hopper. To do this, his system necessarily requires a main switch—by the operation of which the electrical energy is made effective, bringing about the vibration or "shaking" desired, and means are mechanically connected with the switch for the purpose indicated in the claims. A thermionic tube, or a plurality of such, constitutes a feature, or features, of the combination.

It is observed that in his brief appellant claims to have discovered that the primary drawback in the use of such tubes was the fact that the filament was not permitted to become "heated up" before the load was thrown in, thus causing injury to, or destruction of, the tube, and devised the mechanically connected means to overcome this difficulty by preheating the tube.

While appellant may have made this discovery independently, it nevertheless appears that he was not the first to teach it. In the specification of the Dawson patent we find the following: "The cathode 71 of the tube requires considerable time to be heated to a proper temperature for emitting, and it is seriously impaired if it emits before it reaches this temperature. A time delay relay 93 is therefore provided for preventing the application of the requisite potential between the anode 69 and the cathode 71 of the tube 67 until the cathode has attained a proper temperature."

■ So, we have in Dawson the definite teaching of the problem and disclosure of means for its solution. It is true, as the board points out, that Dawson's means are electrical in type and no mechanical connection is shown between the main switch

(which, incidentally, is not disclosed in Dawson but which, obviously, must be an element in his combination) and the time delay device, but we concur in the view that it did not constitute invention to make the substitution defined by appellant. It may be that in appellant's "means" per se there is a patentable element, but this would not of itself render patentable the combination in which such means is used. As was said by the examiner, "Nothing is specified as to the nature * * * of the mechanical connection."

Claim 3, we think, was properly rejected on Dawson, and claim 11 on Dawson in view of Woodruff.

The decision of the Board of Appeals is affirmed.

Affirmed.